## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAWRENCE PHILLIPS, on behalf of himself and all others similarly situated, <br><br><br>              Plaintiff, <br><br>      vs. <br><br> COTY INC., PETER HARF, PIERRE LAUBIES, SABINE CHALMERS, JOACHIM FABER, OLIVIER GOUDET, ANNA-LENA KAMENETZKY, ERHARD SCHOEWEL, ROBERT SINGER, and PAUL S. MICHAELS, <br><br>           Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY DEMAND** |

Plaintiff Lawrence Phillips ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action on behalf of himself and the public stockholders of Coty Inc. ("Coty" or the "Company") against the Company and Coty's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), §§ 78n(e) and 78t(a) respectively, and U.S. Securities and Exchange Commission (the "SEC") Rule 14d-9 (17 C.F.R. §

240.14d-9) and SEC Regulation G, 17 C.F.R. 244.100, in connection with the proposed acquisition of Coty by JAB Holdings Company ("JAB") through JAB affiliate Cottage Holdco ("Cottage").

2.       On February 12, 2019, the Company announced that JAB, through its affiliate Cottage, intended to commence an all cash tender offer in which JAB would seek to acquire 150 million shares of Company common stock at a purchase price of $11.65 per share (the "Tender Offer").

3.       The Tender Offer commenced on February 13, 2019 when JAB filed a Tender Offer Statement on Schedule TO with the SEC.   The Company filed a Schedule 14D-9 Solicitation/Recommendation Statement (the "14D-9") with the SEC on February 27, 2019, without the recommendation of a Special Committee that had been formed to consider the Tender Offer. On March 18, 2019, the Company amended the 14D-9 (the "14D-9/A") recommending that the Company's stockholders tender their shares for the Tender Offer price.  The Tender Offer is set to expire on April 15, 2019.[1]

4.       Plaintiff alleges that the 14D-9/A is materially false and/or misleading because, *inter alia*, it fails to disclose certain material projected internal financial information about the Company, relied on by the Individual Defendants to recommend the Tender Offer and certain inputs underlying certain valuation methodologies employed by the Company's financial advisor Centerview Partners LLC ("Centerview") in their financial analyses that support the fairness opinions provided by Centerview. These omissions render the projected financial disclosures and the summary of the fairness opinion in the 14D-9/A incomplete and/or misleading.

---

[1] The original expiration date of the tender offer was March 29, 2019. However, JAB and the Company filed a Schedule TO-T/A with the SEC on April 1, 2019 extending the offer to April 15, 2019.

5.      The failure to adequately disclose such material information constitutes a violation of §§ 14(e) and 20(a) of the Exchange Act, among other reasons, because Coty stockholders are entitled to such information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Tender Offer.

6.      For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Tender Offer or, in the event the Tender Offer is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under §§ 14(e) and 20(a) of the Exchange Act, 15 U.S.C. § 78n(e) and 78t(a).  The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because a substantial portion of the events or omissions occurred in this District.

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of shares of Coty common stock.

11.     Defendant Coty is a Delaware corporation with its principal executive offices located at 350 Fifth Avenue, New York, NY 10118.  Coty's common stock trades on the NYSE stock exchange under the ticker symbol "COTY".

12.     Individual Defendant Dr. Peter Harf ("Harf") has served as Chairman of the board from January 2001 – September 2011, and from November 2018 to the present, and has been a member of the Board since January 1996, except for the period between September 2011 and November 2011.

13.     Individual Defendant Erhard Schoewel ("Schoewel") has served as a member of the Board since January 2006 and has been the lead director since November 2018.

14.     Individual Defendant Pierre Laubies ("Laubies") is the Chief Executive Officer (CEO) of the Company and has served as a member of the Board since November 2018.

15.     Individual Defendant Sabine Chalmers ("Chalmers") has served as a member of the Board since April 2017.

16.     Individual Defendant Joachim Faber ("Faber") has served as a member of the Board since December 2010.

17.     Individual Defendant Olivier Goudet ("Goudet") has served as a member of the Board since May 2013.

18.     Individual Defendant Anna-Lena Kamenetzky ("Kamenetzky") has served as a member of the Board since January 2019.

19.     Individual Defendant Robert Singer ("Singer") has served as a member of the Board since January 2010.

20.     Individual Defendant Paul S. Michaels ("Michaels") has served as a member of the Board since June 2015.

21.     The Individual Defendants referred to above are collectively referred to herein as the "Individual Defendants" and/or the "Board." The Individual Defendants and Coty may also collectively be referred to as "Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action individually and as a class action on behalf of all holders of Coty stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

23.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

24.     The Class is so numerous that joinder of all members is impracticable. As of April 2, 2019, there were 751,257,000 shares of common stock issued and outstanding. On information and belief, these shares are held by thousands of beneficial holders who are geographically dispersed across the country.

25.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

a.      whether Defendants have violated Sections 14 and 20 of the Exchange Act,
and SEC regulations promulgated thereunder, in connection with the Tender
Offer; and

b.      whether Plaintiff and the other members of the Class would be irreparably
harmed and/or otherwise damaged were the transaction complained of
herein consummated.

26.     Plaintiff's claims are typical of the claims of the other members of the Class and
Plaintiff does not have any interests adverse to the Class.

27.     Plaintiff is an adequate representative of the Class, has retained competent counsel
experienced in litigation of this nature, and will fairly and adequately protect the interests of the
Class.

28.     The prosecution of separate actions by individual members of the Class creates a
risk of inconsistent or varying adjudications with respect to individual members of the Class, which
could establish incompatible standards of conduct for Defendants.

29.     Plaintiff anticipates that there will be no difficulty in the management of this
litigation.   A class action is superior to other available methods for the fair and efficient
adjudication of this controversy.

30.     Defendants have acted on grounds generally applicable to the Class with respect to
the matters complained of herein, thereby making appropriate the relief sought herein with respect
to the Class a whole.

31.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of
himself and the Class to prevent the irreparable injury that the Company's stockholders will suffer

absent judicial intervention and, in the absence of injunctive relief, seeks to pursue a claim for damages.

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Tender Offer

32.     In its SEC filings, Coty describes itself as a multi-segmented beauty company with market positions in both North America and Europe. Coty maintains strong positions in fragrances, professional salon hair color & styling, and color cosmetics. The Company is divided into three divisions; Consumer Beauty, Luxury and Professional Beauty. Consumer Beauty is primarily focused on color cosmetics, retail hair coloring and styling products, body care and mass fragrances. Luxury is primarily focused on prestige fragrances, premium skincare and premium cosmetics. Professional beauty is primarily focused on hair and nail care products for salon professionals. Coty is focused on rejuvenating its core businesses and amplifying its growth potential through strengthening its brands and developing a stronger innovation pipeline. Additionally, the company is expanding into faster growing emerging markets.

33.     On February 12, 2019, JAB sent the Board a letter expressing its intent to commence a Tender Offer to acquire 150 million shares of common stock to increase its ownership to 60%.

34.     The same day, JAB announced the Tender Offer, which stated the following, in relevant part:

JAB Proposes Partial Tender Offer to Acquire Additional Shares of Coty

Offer Reflects an Immediate and Significant Premium While Retaining
Opportunity for Shareholders to Participate in Coty's Long-Term Potential

Proposal Would Allow JAB to Acquire up to 150 Million Additional Coty Shares
at a Significant Premium

LUXEMBOURG – February 12, 2019 – JAB, a global investment firm focused on long-term investing in premium brands in consumer goods and services, today announced that an affiliate will shortly commence a tender offer pursuant to which JAB Cosmetics B.V. would acquire up to 150 million additional shares of Coty Inc. (NYSE:COTY) Class A common stock at a price of $11.65 per share in cash. The offer is subject to, among other things, approval of Coty's independent directors.

The key terms of the offer are contained in the full text of the letter delivered to the Coty Board of Directors by JAB which is included below:

February 12, 2019

Coty Inc.
350 Fifth Avenue
New York, NY

Attention: Board of Directors Members of the Board of Directors:

On behalf of JAB Holding Company S.à r.l. ("JAB"), we are pleased to advise you that we are commencing shortly a tender offer, pursuant to which we would acquire up to 150 million shares of Class A common stock (the "Common Stock") of Coty Inc. (the "Company") at a price per share of $11.65 in cash (the "Offer"). The Offer represents a premium of approximately 38% to the 90-day volume-weighted average share price as of yesterday, a premium of approximately 51% to the 30-day volume-weighted average share price as of yesterday, and approximately a 21% premium to yesterday's closing share price. If shareholders tender more than 150 million shares of Common Stock, we will purchase such shares on a pro rata basis.

We at JAB have been investors in the Company for almost three decades and expect to remain so. We believe that the Company has the potential to address its challenges and prosper over the long-term, and that the Company's recent management changes are an important first step in addressing the Company's recent performance.

We understand that not all investors may share our long-term approach and we expect that shareholders will value the opportunity to obtain a significant premium for their shares in the Offer, even taking into account the recent strong increase in the Company's share price. At the same time, we appreciate that some shareholders will want to participate in the Company's long-term potential value by retaining some or all of their shares in the Company after the Offer.

It is our expectation that the members of the Board of Directors who are determined to be independent for purposes of considering our Offer, advised by independent counsel and financial advisors of their choosing, will consider our proposal in the interests of all shareholders, determine the Company's course of action in response and make a recommendation to the Company's shareholders as required by applicable law. We believe that our offer is very full and compelling, but if the

independent directors do not have a similar view, we will not proceed with the Offer.

The Offer is subject to certain conditions, including that the independent directors of the Company approve the Offer and recommend that the Company's shareholders accept the Offer (the "Board Approval Condition"). We, of course, would be pleased to meet with the independent directors or their advisors to provide any additional information necessary to assist the directors in their deliberations.

The Offer is also subject to other customary conditions, as well as the condition that at least 50 million shares of Common Stock are validly tendered and not withdrawn (the "Minimum Tender Condition"). The Offer is not subject to a financing condition. We have sufficient financial resources to consummate the Offer, including debt commitments from BNP Paribas, HSBC Bank plc and UniCredit Bank AG for all funds required to purchase the maximum number of shares in the Offer.

If all 150 million shares of Common Stock are purchased in the Offer, we would own, together with our current shareholdings, an aggregate of 450,908,041 shares of Common Stock, representing approximately 60% of the issued and outstanding shares of Common Stock. If 50 million shares of Common Stock are purchased in the Offer, which represents the number of shares of Common Stock necessary to satisfy the Minimum Tender Condition, we would own an aggregate of 350,908,041 shares of Common Stock, representing approximately 47% of the issued and outstanding shares of Common Stock.

JAB believes it is in everyone's interest to complete the transaction expeditiously, which includes working with the Company to make the required regulatory filings with the relevant governmental authorities for the Offer. We do not anticipate any substantive competition issues.

We are pleased to provide what we believe is an attractive opportunity to our fellow shareholders and look forward to hearing from you.

Sincerely,

Peter Harf
Chairman, JAB

About JAB Holding Company

JAB Holding Company and JAB Consumer Fund invest in companies with premium brands, attractive growth and strong cash flow dynamics in the consumer category.

Together, JAB Holding Company and JAB Consumer Fund have controlling stakes in Keurig Dr Pepper, a challenger & leader in the North American beverage market, Jacobs Douwe Egberts (JDE), the largest pure-play FMCG coffee company in the world, Panera Bread, a leading bakery-cafe company, Pret A Manger, a leading company in the ready-to-eat food market, Peet's Coffee & Tea, a premier specialty coffee and tea company, Caribou Coffee Company, a specialty retailer of high-quality premium coffee products, Einstein Noah Restaurant Group, Inc., the leader in the North-American bagel category, Krispy Kreme Doughnuts, a global leader in doughnuts and other premium-quality sweet treats, and in Espresso House, the largest branded coffee shop chain in Scandinavia.

JAB Holding Company is also the largest shareholder in Coty Inc., a global leader in beauty, and owns a controlling stake in luxury goods company Bally as well as a minority stake in Reckitt Benckiser PLC, a global leader in health, hygiene and home products. For more information, please visit the company's website at: http://www.jabholco.com.

Additional Information and Where to Find It

The tender offer described in this document has not yet commenced. This announcement is neither an offer to purchase nor a solicitation of an offer to sell shares of Coty. At the time the offer is commenced, an affiliate of JAB will file a Tender Offer Statement on Schedule TO with the Securities and Exchange Commission (the "SEC"). Thereafter, Coty will file a Solicitation/Recommendation Statement on Schedule 14D-9 with respect to the offer as required by applicable law. Coty stockholders and other investors are urged to read the tender offer materials (including an Offer to Purchase, a related Letter of Transmittal and certain other offer documents) and the Solicitation/Recommendation Statement because they will contain important information which should be read carefully before any decision is made with respect to the tender offer.

The Offer to Purchase, the related Letter of Transmittal and certain other offer documents, as well as the Solicitation/Recommendation Statement, will be made available to all stockholders of Coty at no expense to them. The Tender Offer Statement and the Solicitation/Recommendation Statement will be made available for free at the SEC's web site at www.sec.gov. Free copies of these materials and certain other offering documents will be made available by the information agent for the offer.

In addition to the Solicitation/Recommendation Statement, Coty files annual, quarterly and current reports, proxy statements and other information with the SEC. You may read and copy any reports, statements or other information filed by Coty at the SEC public reference room at 100 F Street, N.E., Washington, D.C. 20549. Please call the SEC at 1-800-SEC-0330 for further information on the public reference room. Coty's filings with the SEC are also available to the public from

commercial document retrieval services and at the website maintained by the SEC
at www.sec.gov.

35.     In light of the fact that JAB and its affiliates own a significant amount of shares of
the Company and the fact that four members of the Board also are officers, employees and/or
affiliates of JAB or its affiliates (Harf, Faber, Goudet and Kamenetzky) and therefore have
conflicts of interest, the Company established a Special Committee of independent directors (the
"Committee") to, among other things, make a recommendation to the board on whether or not to
recommend the offer to the shareholders of the Company. 14D-9, p. 12.

36.     On March 18, 2019, the Company amended the 14D-9 with the Committee
recommendation that the Proposed Transaction was in the best interest of shareholders. 14D-9/A,
p. 18. Four of the board members, Harf, Faber, Goudet and Kamenetzky, excused themselves from
the meeting and the remaining five board members, three of whom comprised the Committee,
voted unanimously to recommend to shareholders that they should tender their shares. 14D-9/A,
pp. 18-19.

37.     At the time of the offer, the Company was going through a management change.
Several of the Company's senior management positions, including Chief Executive Officer
("CEO"), Chief Financial Officer ("CFO"), the Chief Operating Officer ("COO") for the
Company's Consumer Beauty division and the Company's Head of Supply Chain had just recently
joined the Company. Additionally, during this time period the new senior management was in the
process of developing a comprehensive strategic plan. 14D-9/A, p. 23.

38.     In making its recommendation, the Committee relied on Projections created by the
Company's management, including the new members of the senior management. 14D-9/A, at p.
22.

39.     However, at this time, the Company did not have a current strategic plan or other medium- or long-term forecasts or projections covering all three of its business segments that it believed were appropriate for the Committee to use in order to evaluate the offer. 14D-9/A, p. 25. Given the lack of adequate projections, the Committee requested that management "consider the then current key assumptions that were expected to underlay the Company's new strategic plan as well as the opportunities and challenges facing the Company and the approach management would take to adjusting the Company's prior strategic plan to reflect the potential impact of such assumptions, opportunities and challenges." 14D-9/A, pp. 25-26.

40.     The process resulted in five-year, risk-adjusted financial projections that were prepared on bases reflecting the best currently available estimates and judgment of the management of the Company and based on certain key assumptions. 14D-9/A, p. 26.

41.     The Company provided a summarized chart of the five-year, risk adjusted financial projections:

| | Fiscal Year Ending June 30, | | | | | |
| | 2019E | 2020E | 2021E | 2022E | 2023E | 2024E |
|---|---|---|---|---|---|---|
| **Net Revenue** | $ 8,777 | $ 8,701 | $ 8,759 | $ 8,910 | $ 9,105 | $ 9,309 |
| *% Growth* | *(6.6%)* | *(0.9%)* | *0.7%* | *1.7%* | *2.2%* | *2.2%* |
| **Adj. EBITDA**[(1)] | $ 1,323 | $ 1,419 | $ 1,518 | $ 1,628 | $ 1,745 | $ 1,786 |
| *% Margin* | *15.1%* | *16.3%* | *17.3%* | *18.3%* | *19.2%* | *19.2%* |
| **Adj. Operating Inc.**[(2)] | $ 954 | $ 1,029 | $ 1,125 | $ 1,233 | $ 1,347 | $ 1,386 |
| *% Margin* | *10.9%* | *11.8%* | *12.8%* | *13.8%* | *14.8%* | *14.9%* |
| *Margin Expansion* | *23bps* | *95bps* | *102bps* | *99bps* | *96bps* | *9bps* |

14D-9/A, p. 27.

## II.     The 14D-9/A Omits Material Information

42.     The 14D-9/A omits material information that renders statements made materially misleading. Specifically, the 14D-9/A omits material information regarding: (i) certain of the Company's financial projections; and (ii) the valuation analyses performed by the Company's financial advisor in support of their respective fairness opinions.

*The Company's Financial Forecasts*

43.     The Forecasts include Adjusted Earnings Before Income and Taxes, Depreciation and Amortization ("Adjusted EBITDA") and Adjusted Operating Income, both non-GAAP (generally accepted accounting principles) metrics.

44.     The 14D-9/A describes Adjusted EBITDA as "adjusted operating income less depreciation" and Adjusted Operating Income as "exclud[ing] restructuring costs and business structure realignment programs, amortization, acquisition-related costs and acquisition accounting impacts, asset impairment charges and certain other adjustments." 14D-9/A, p. 27.

45.     This information in the 14D-9/A is misleading because Defendants fail to disclose the inputs used to calculate Adjusted Operating Income and Adjusted EBITDA, including especially "operating income."

46.     The omission of this information is all the more misleading because the Company appears not to report certain of these non-GAAP measures on a regular basis, e.g., Adjusted EBITDA, making it impossible for shareholders to compare the non-GAAP Forecasts to the Company's GAAP compliant financial measures in prior SEC filings even though the 14D-9/A expressly informs shareholders that they should not consider non-GAAP financial measures in isolation or as a substitute for GAAP compliant financial measures.

47.     In the Company's last five 10-Qs and last two 10-Ks, the word "EBITDA" has been mentioned zero times in the 10-Qs and four times in the 10-Ks, excluding mention in a covenant in a debt financing agreement. However, the mentions in the 10-Ks are about an unrelated matter. Excluding the mention in a debt financing agreement, the words "Adjusted EBITDA" or "Adj. EBITDA" are mentioned zero times in both the last five 10-Qs and the last two 10-Ks[2].

---

[2] *See* Coty Inc., Annual Report for Fiscal Year Ending June 30, 2017 (Form 10-K) (Aug. 23, 2017); Coty Inc., Annual Report for Fiscal Year Ending June 30, 2018 (Form 10-K) (Aug. 21, 2018);

48.     This omitted information is material information because Defendants themselves disclose that "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by the Company may not be comparable to similarly titled amounts used by other companies." 14D-9/A, p. 27.

49.     Clearly, shareholders would find the aforementioned information material since the Board's unanimous recommendation that shareholders tender their shares in connection with the Tender Offer was based in part on its review of this information. 14D-9/A, p. 22.[3]

50.     The use of non-GAAP compliant financial measures, as was done here, is misleading.  When a company discloses non-GAAP financial measures in a 14D-9/A that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the Company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable

---

Coty Inc., Quarterly Report For the Quarter Ending September 30, 2017 (Form 10-Q) (Nov. 9, 2017); Coty Inc., Quarterly Report For the Quarter Ending December 31, 2017 (Form 10-Q) (Feb. 8, 2018); Coty Inc., Quarterly Report For the Quarter Ending March 31, 2018 (Form 10-Q) (May 9, 2018); Coty Inc., Quarterly Report For the Quarter Ending September 30, 2018 (Form 10-Q) (Nov. 7, 2018); Coty Inc., Quarterly Report For the Quarter Ending December 31, 2018 (Form 10-Q) (Feb. 8, 2019).

[3] "*Financial and Business Information; Projections.* The Special Committee received financial, business and other information concerning the historical and current financial condition, results of operations, leverage, business and prospects of the Company, the risks involved in achieving those prospects, and national and international economic conditions and conditions in the markets and industries in which the Company operates. The Special Committee engaged in discussions with management and Centerview regarding such financial, business and other information and considered the potential impact of such financial, business and other information on the Company's financial condition and operating performance, as well as on the market valuation of the Company and its stock price and performance. Additionally, the Special Committee considered the five-year Projections (defined below) and the potential opportunities and risks relating to management's ability to develop and execute a new strategic plan for the Company."

method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP.  17 C.F.R. § 244.100.

51.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial

measures in communications with shareholders.  Former SEC Chairwoman Mary Jo White has

stated that the frequent use by publicly traded companies of unique company-specific non-GAAP

financial measures (as Coty included in the 14D-9/A here), implicates the centerpiece of the SEC's

disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the
> GAAP information, has become the key message to investors, crowding out and
> effectively supplanting the GAAP presentation.    Jim Schnurr, our Chief
> Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation
> Finance and I, along with other members of the staff, have spoken out frequently
> about our concerns to raise the awareness of boards, management and investors.
> And last month, the staff issued guidance addressing a number of troublesome
> practices *which can make non-GAAP disclosures misleading*: the lack of equal or
> greater prominence for GAAP measures; exclusion of normal, recurring cash
> operating expenses; individually tailored non-GAAP revenues; lack of consistency;
> cherry-picking; and the use of cash per share data.  I strongly urge companies to
> carefully consider this guidance and revisit their approach to non-GAAP
> disclosures.  I also urge again, as I did last December, that appropriate controls be
> considered and that audit committees carefully oversee their company's use of non-
> GAAP measures and disclosures.[4]

52.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can

be inherently misleading and has therefore heightened its scrutiny of the use of such projections.[5]

---

[4]      Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

[5]      *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times (Apr. 22, 2016), *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

53.     At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such projections are necessary to make the non-GAAP projections included in the 14D-9/A not misleading.

**The Financial Advisor's Valuation Analyses and Fairness Opinion**

54.     With respect to Centerview's Discounted Cash Flow Analysis, the 14D-9 fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the selection of the discount rate range of 8.0%-9.0%, including the Company's weighted cost of capital, the forecasted risk-adjusted, after-tax unlevered free cash flows of the Company over the period beginning on July 1, 2019 and ending on June 30, 2024; (ii) an implied terminal value of the Company, calculated by Centerview applying perpetuity growth rates ranging from 2.0% to 3.0% to the Company's fully taxed unlevered free cash flows for the terminal year, and (iii) the Company's estimated net debt as of June 30, 2019, adjusted for noncontrolling interests. 14D-9/A, p. 33.

55.     These key inputs are material to Coty shareholders, and their omission renders the summary of Centerview's DCF valuation analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . . ."  *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . .  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation

16

to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78.

56.    Additionally, Centerview states that all of the inputs are "as set forth in the Company Forecasts." 14D-9/A, p. 33. However, nowhere in the Company's *Projections Used by the Special Committee* is this information disclosed.

57.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Coty stockholders.  Accordingly, based on the foregoing disclosure deficiencies in the 14D-9, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Coty stockholders will suffer, absent judicial intervention, if Coty's stockholders are required to decide whether or not to tender their shares without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of § 14(e) of the Securities Exchange Act of 1934

58.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." 15 U.S.C. § 78n(e).

60.    As discussed above, Coty filed and delivered the 14D-9/A to its stockholders, which Defendants knew contained, or recklessly disregarded, material omissions and misstatements described herein.

61.     Defendants violated § 14(e) of the Exchange Act by issuing the 14D-9/A in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer.  Defendants knew or recklessly disregarded that the 14D-9/A failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62.     The 14D-9/A was prepared, reviewed and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

63.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the 14D-9/A, Defendants were aware of this information and their obligation to disclose this information in the 14D-9/A.

64.     The omissions and misleading statements in the 14D-9/A are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the 14D-9/A as altering the "total mix" of information made available to stockholders.

65.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the 14D-9/A, causing certain statements therein to be materially

incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or

reviewed the omitted material information in connection with approving the Tender Offer, they

allowed it to be omitted from the 14D-9/A, rendering certain portions of the 14D-9/A materially

incomplete and therefore misleading.

66.     The misrepresentations and omissions in the 14D-9/A are material to Plaintiff, and

Plaintiff and Coty stockholders will be deprived of their entitlement to make a fully informed

decision if such misrepresentations and omissions are not corrected prior to the expiration of the

Tender Offer.

<u>**COUNT II**</u>
**Against the Individual Defendants for**
**Violations of § 20(a) of the Securities Exchange Act of 1934**

67.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Coty within the meaning

of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers

and/or directors of Coty and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the false statements contained in the 14D-9/A, they had the power to

influence and control and did influence and control, directly or indirectly, the decision making of

the Company, including the content and dissemination of the various statements that Plaintiff

contends are false and misleading.

69.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the 14D-9/A alleged by Plaintiff to be misleading prior to and/or shortly after these

statements were issued and had the ability to prevent the issuance of the statements or cause them

to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The 14D-9/A contains the unanimous recommendation of the Individual Defendants to approve the Tender Offer. They were thus directly involved in the making of the 14D-9/A.

71.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

72.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the Tender Offer or consummating the Tender Offer, unless and until the Company discloses the material information discussed above, which has been omitted from the 14D-9/A;

C.     In the event Defendants consummate the Tender Offer, awarding damages to Plaintiff and the Class;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated:  April 3, 2019

                                                      Respectfully submitted,

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**                     **FARUQI & FARUQI, LLP**


Nadeem Faruqi                                By: */s/ Michael Van Gorder*
James M. Wilson, Jr.                         Michael Van Gorder (#6214)
685 Third Ave., 26th Fl.                     3828 Kennett Pike, Suite 201
New York, NY 10017                           Wilmington, DE 19807
Telephone: (212) 983-9330                    Tel.: (302) 482-3182
Email: nfaruqi@faruqilaw.com                 Email: mvangorder@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*                      *Counsel for Plaintiff*